IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHN HINES | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:23-cv-363 |
| | ) | |
| AZALEA HEALTH & REHAB, LLC; | ) | |
| PREMIER HEALTHCARE | ) | |
| CONSULTANTS, LLC; ESSENTIAL | ) | |
| HEALTH GROUP LLC; ESSENTIAL | ) | **JURY DEMAND** |
| HEALTH GROUP II LLC; ESSENTIAL | ) | |
| HEALTH GROUP III LLC; ESSENTIAL | ) | |
| HEALTH GROUP IV LLC; and | ) | |
| SHALOM LERNER, an individual, | ) | |
| YOSSI EMANUEL, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>COMPLAINT</u>

## I.    <u>NATURE OF THE ACTION</u>

1.    This is an action for legal and equitable relief to redress unlawful discrimination against

the plaintiff. The suit is brought pursuant to Title VII of the Civil Rights Act of 1964, 42

U.S.C. §§ 2000e *et seq.*, as amended by the Civil Rights Act of 1991 (hereinafter "Title

VII"), and 42 U.S.C. §1981 (hereinafter "§1981"), which prohibit employment

discrimination based on race and retaliation. The plaintiff seeks declaratory, injunctive, and

other equitable remedies, including reinstatement and back pay, as well as compensatory

and punitive damages, attorneys' fees, and expenses. The plaintiff requests a trial by jury

of all issues triable by a jury.

## II.    <u>JURISDICTION AND VENUE</u>

2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), 2201,

and 2202, and 42 U.S.C. §2000e-5(f)(3).

3.   The unlawful employment practices alleged hereinbelow were committed by the defendants within Mobile County, Alabama and within this district. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. §2000e-5(g).

4.   This Court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S. Code §1367 because all such claims arise from a common nucleus of operative fact.

5.   The plaintiff requests a jury trial on all equitable claims and defenses and all issues triable by a jury.

### III.   PARTIES

6.   The plaintiff, John Hines, (hereinafter referred to as "plaintiff" or "Hines"), is an adult male citizen of the United States, and a resident of the State of Alabama. The plaintiff was employed by the defendants during the relevant time period.

7.   Defendant Azalea Health and Rehab, LLC (hereinafter "defendant" or "AHR") is an employer subject to suit under Title VII and a person subject to suit under 42 U.S.C. §1981. The defendant has more than fifteen (15) employees and conducted business in Mobile County, Alabama, which is in this district. The defendant was, at all times relevant to this action, the plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 19641.

8.   Defendant Essential Health Group LLC (hereinafter "defendant" or "ESG-1") is an employer subject to suit under Title VII and a person subject to suit under 42 U.S.C. §1981. The defendant has more than fifteen (15) employees and conducted business in Mobile County, Alabama, which is in this district. The defendant was, at all times relevant to this

action, the plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964.

9.  Defendant Essential Health Group II LLC (hereinafter "defendant" or "ESG-2") is an employer subject to suit under Title VII and a person subject to suit under 42 U.S.C. §1981. The defendant has more than fifteen (15) employees and conducted business in Mobile County, Alabama, which is in this district. The defendant was, at all times relevant to this action, the plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964.

10. Defendant Essential Health Group III LLC (hereinafter "defendant" or "ESG-3") is an employer subject to suit under Title VII and a person subject to suit under 42 U.S.C. §1981. The defendant has more than fifteen (15) employees and conducted business in Mobile County, Alabama, which is in this district. The defendant was, at all times relevant to this action, the plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964.

11. Defendant Essential Health Group IV LLC (hereinafter "defendant" or "ESG-4") is an employer subject to suit under Title VII and a person subject to suit under 42 U.S.C. §1981. The defendant has more than fifteen (15) employees and conducted business in Mobile County, Alabama, which is in this district. The defendant was, at all times relevant to this action, the plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964.

12. Defendant Premier Healthcare Consultants, LLC (hereinafter "defendant" or "ESG-4") is an employer subject to suit under Title VII and a person subject to suit under 42 U.S.C.

§1981. The defendant has more than fifteen (15) employees and conducted business in Mobile County, Alabama, which is in this district. The defendant was, at all times relevant to this action, the plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964.

13.  Defendant Shalom Lerner is an individual who engaged in business in this judicial district and is a person subject to suit under 42 U.S.C. §1981 and under Alabama law.

14.  Defendant Joseph Emanuel is an individual who engaged in business in this judicial district and is a person subject to suit under 42 U.S.C. §1981 and under Alabama law.

## IV.  ADMINISTRATIVE PROCEDURES

15.  The plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII. The plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the occurrence of the last discriminatory act. The plaintiff timely filed this lawsuit within 90 days of the receipt of notice of right to sue from the EEOC.

16.  On or about January 30, 2023, the plaintiff timely filed a charge of discrimination with the EEOC (Charge Number 425-2023-013115) alleging, *inter alia*, discrimination based on race and retaliation. Attachment 1.

17.  On or about August 11, 2023, the EEOC issued a "Notice of Right to Sue Within 90 Days", which stated, "If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of receipt of this Notice". Attachment 2.

18.  The plaintiff's claims of discrimination under 42 U.S.C. §1981 do not require administrative exhaustion.

## VI.    DEFENDANTS ARE AN INTEGRATED ENTERPRISE AND/OR THE PLAINTIFF'S JOINT EMPLOYER

19.    Azalea Health and Rehab ("AHR") operates a nursing home in Mobile, Alabama, located at 1758 Springhill Avenue, Mobile, Alabama, 36608. Upon information and belief Shalom Lerner is the owner of Azalea Health and Rehab, LLC.

20.    The office of the Secretary of State of the State of Alabama identifies Shalom Lerner as the "organizer" of Azalea Health and Rehab, LLC, Essential Health Group LLC, Essential Health Group II LLC, Essential Health Group III LLC, and Essential Health Group IV LLC.

21.    Upon information and belief, Azalea Health and Rehab, LLC, Essential Health Group LLC, Essential Health Group II LLC, Essential Health Group III LLC, and Essential Health Group IV LLC are related entities with significant and substantial common membership or directly or indirectly substantial common direction or control.

22.    Upon information and belief, Shalom Lerner is also the owner of:

    a.    Crimson Health and Rehab, LLC, in Montgomery, Alabama

    b.    Summerford Health and Rehab, LLC , in Falkville, Alabama;

    c.    Selma Health and Rehab, LLC, in Selma, Alabama,

    d.    Forest Manor Health and Rehab, LLC, Northport, Alabama

    e.    Azalea Health and Rehab, LLC, in Mobile, Alabama

    f.    Choctaw Health and Rehab, LLC, Butler, Alabama

    g.    Montgomery Health and Rehab, LLC, in Montgomery, Alabama

    h.    West Hill Health and Rehab, LLC, Birmingham, Alabama

    i.       Montrose Bay Health and Rehab, LLC, Fairhope, Alabama

    j.       Belmont Lodge Healthcare Center, LLC, Pueblo, Colorado,

    k.      Waterbury Gardens Nursing and Rehab, LLC, Waterbury, Connecticut

    l.       Carroll Health and Rehab, LLC. Oak Grove, LLC, Louisiana

    m.     Bushwick Center Rehabilitation and Health Care; LLC Brooklyn, New York;

23.    Upon information and belief, these companies, along with the named defendant entities, are related entities with significant and substantial common membership or directly or indirectly substantial common direction or control.

24.    The defendant entities were a single integrated enterprise and were the plaintiff's employer according to Title VII and 42 U.S.C. §1981. The defendant entities are interrelated entities which share a common business purpose and common ownership, including but not limited to common offices, common record keeping, common employees, and shared bank accounts. Most of these entities have the same registered agent and the same address for the service of process.

25.    In the alternative, the defendant entities were a joint operation and the plaintiff's employer according to Title VII and 42 U.S.C. §1981.

26.    These related companies have more than 500 employees and locations throughout Alabama and the rest of the United States.

**VII.**    **<u>STATEMENT OF FACTS</u>**

27.    John Hines is a white male.

28.    The vast majority of the approximately 70 employees at the AHR location in Mobile, Alabama were African American. There were approximately 5 white employees.

29.    Approximately 51% of the population of Mobile, Alabama is African American, 43% are white and the remainder is composed of other racial groups.

30.    During June of 2022, Hines was working in Montgomery at a job he enjoyed and paid well.

31.    During the relevant time period, Joseph Emanuel was the COO and Operations Manager for AHR and Director of Operations for Premier Healthcare Consultants, LLC.

32.    A friend recommended that Hines talk to AHR, so he sent Emanuel a text.

33.    Emanuel invited Hines travel to Mobile for a visit during June of 2022.

34.    Hines submitted an application to AHR and, soon after, Emanuel called him.

35.    Emanuel hired Hines as Maintenance Director.

36.    Emanuel promised Hines that if he relocated to AHR in Mobile, Alabama, that he would pay him me $4,000.00 for moving expenses.

37.    Emanuel did not tell Hines that he was would deduct taxes from this money. The fact that Emanuel treated this money as income meant that Hines received substantially less than $4,000.00.

38.    On June 20, 2022, Hines reported for work and was surprised that the facility was in such poor shape. It was evidence that AHR had neglected maintenance of the facility.

39.    As Maintenance Director, Hines supervised the two maintenance technicians, Frank Green (African American male) and Alonzo Bass (African American male).

40.    The maintenance technicians were supposed to keep the grounds clean, fix leaking faucets, repair busted toilets, and generally to repair broken items and keep the premises clean.

41.    Green and Bass had very little to no experience in the job assignments they were supposed to perform and were very lazy.

42.    Hines explained that he had higher expectations for them and let both of them know that he would help to teach them how to do their jobs correctly.

43.    Hines noticed that the work environment at the AHR Mobile, Alabama location was hostile towards white employees.

44.    Green was frequently and routinely late for work and also frequently and routinely left work early.

45.    Green smelled of marijuana almost every day.

46.    Bass's wife, Deborah Bass (African American female), also worked for AHR. Bass would stay in his wife's office and avoid work.

47.    Both Green and Bass would hide while they were at work so that Hines had to spend time trying to find them so he could get them to perform their jobs.

48.    Green and Bass both went up to unclog a toilet, which one of them could have done, and came back to Hines and claimed they could not unclog the toilet.

49.    Hines had to show them how to unclog a toilet but suspected Green and Bass knew how to unclog a toilet and were being insubordinate by claiming they didn't know how so that Hines would have to do it.

50.    Bass was always telling me to fire Green because Green was a lazy, incompetent, slacker.

51.    Hines verbally counseled both of them on numerous occasions that they needed to do their jobs, show up on time, be available to work, and to perform their jobs in a timely manner.

52.    Hines gave both of them numerous opportunities to correct their behavior and improve their work performance.

53. Building Administrator Betty Edwards (African American female) undermined Hines with Green and Bass. Hines would give them an assignment and Edwards would tell them that they did not have to perform the assignment.

54. Edwards told Hines that he was supposed to do whatever she told him to do and that she was his boss and he had to follow her orders.

55. Edwards once told Hines to clean up the parking lot and, as he prepared to clean the parking lot, she told him she had never said to clean the lot. Edward then told Hines to paint the front hallway.

56. On August 15, 2022, Green left a signed resignation letter in which he gave two weeks' notice.

57. In that letter, Green thanked the administration, all department heads, which included Hines, and all staff for a wonderful experience at AHR, and going forward he wished everyone the absolute best and blessings from God.

58. Hines took the resignation letter to Building Administrator Betty Edwards so AHR could look for a replacement for Green.

59. On Monday, August 15, 2023, Bass called Hines and told him that he had a toothache and needed to go the dentist. Later, Bass texted Hines and said that the one tooth that he had called in sick about had actually turned in to three teeth that had to be extracted.

60. Green said that his face was still very much swollen but that he hoped to see us tomorrow and told Hines to be blessed.

61. On Tuesday, August 16, 2022, Bass sent Hines a text to let him know that he was not coming in that day because he had a bad tooth ache that might be infected so he was going to see the dentist.

62. Also on Tuesday, August 16, 2022, Edwards sent Hines a text and said that Green had come in to see her and asked if he knew why Green was there.

63. Hines did not know why Green was there but had told him he could leave his key at the front desk.

64. Later, Hines received another text from Edwards and it said, "John [Hines] call me when you get a minute please".

65. Later that day, Bass came to work and it was evident he had lied about having a toothache.

66. Green and Bass met with Edwards and Human Resources Representative Melanie Schrumpt (white female).

67. Edwards and Schrumpt spent much of the afternoon meeting with Green and Bass.

68. Toward the end of the day, Edwards called Hines into her office and said that Green and Bass had alleged that Hines was a racist and that he had made racist remarks and made them watch Trump videos and racist videos. Green and Bass also alleged that Hines stole from the company.

69. Green and Bass had never made any such complaints to Hines or to anyone else prior to that date.

70. The only videos Hines told them to watch were videos on how to repair equipment to help them do their jobs.

71.    Hines told Edwards and Schrumpt that what they were saying was absurd and that they were lying because they wanted Hines fired because he expected them to do their jobs properly.

72.    Hines told Edwards and Schrumpt that: (1) Green and Bass did not like to work or for Hines to tell them what to do; (2) that Bass liked to waste time hanging out with his wife when he was supposed to be working; (3) Green and Bass would hide and find places to sleep; (4) Green and Bass were constantly making personal calls when they were supposed to be working.

73.    AHR fired Hines without any investigation into these complaints other than accepting Green and Bass's allegations.

74.    Green and Bass had never complained about Hines prior to that day.

75.    None of the other employees had ever complained about Hines prior to that day.

76.    The White people who worked at ACM were constantly being badgered by their Black supervisors.

77.    Many of the Whites quit because of the discriminatory environment against them.

78.    I never observed the White employees hiding in the facility and talking on the phone.

79.    Several of the African American Certified Nursing Assistants (CANs) would come into the work site smelling of marijuana and nothing was said to them.

80.    Many of the African American employees smoked marijuana on their lunch breaks and were never disciplined.

81.    Hines told Frank that, if he ever smelled marijuana on him again, he was going to make him take a drug test, and Green stopped coming in smelling like marijuana.

82. AHR investigated allegations that Green brought marijuana to a resident, but Green was not disciplined.

83. Green and Bass falsely claimed to the supervisors that Hines was cousins with Schrupmt and that he was best friends with Emanuel.

84. On or about August 16, 2022, Hines complained about the racial discrimination against him.

85. Hines also learned that Lawrence Hunter had previously complained about racial discrimination against White employees.

86. Upon information and belief, there are other White employees that will testify that AHR discriminated against them because of their race.

## DAMAGES

87. The plaintiff is now suffering, and will continue to suffer, irreparable injury from the defendants' unlawful conduct as set forth herein unless enjoined by this Court.

88. The plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional and physical pain and anguish and lost wages and other pecuniary losses as a consequence of the defendants' unlawful conduct.

89. The plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, and compensatory, punitive and liquidated damages is her only means of securing adequate relief.

## COUNT ONE
### Race Discrimination (Harassment) in Violation of Title VII and 42 U.S.C. §1981

90.     The plaintiff re-alleges the factual allegations in the complaint and incorporates the same by reference herein.

91.     The defendants intentionally discriminated against the plaintiff on the basis of race with regard to job assignments, discipline, and other terms and conditions of employment.

92.     The actions of the defendants, through its agents, other employees and managers, created a hostile work environment for the plaintiff which was based on race and was continuous in nature during his employment. The hostile work environment was a continuing violation of Title VII.

93.     The defendants had actual and constructive knowledge of the racial harassment because the harassment was open and obvious and because managerial employees participated in the harassment, but the defendants failed to take prompt action to correct or eliminate the harassment.

94.     The defendants had actual and constructive knowledge of the racial harassment because the plaintiff and other employees complained to managerial employees, but the defendants failed to take prompt action to correct or eliminate the harassment.

95.     The defendants engaged in the practices complained of herein with malice and/or reckless indifference to the plaintiff's federally protected rights.

96.     As a result and consequence of the defendants' actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

97.     This claim is brought against the defendant employers pursuant to Title VII and 42 U.S.C. §1981 and against individual defendants Lerner and Emanuel pursuant to 42 U.S.C. §1981.

## COUNT TWO
### Race Discrimination (Termination) in Violation of Title VII and 42 U.S.C. §1981

98.   The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by reference herein.

99.   The defendants intentionally discriminated against the plaintiff on the basis of his race with regard to job assignments, discipline, and other terms and conditions of employment, by reducing his responsibilities and limiting his opportunities for advancement, including initiated a process which resulted in his termination in violation of Title VII and 42 U.S.C. §1981.

100.  The defendants engaged in the practices complained of herein with malice and/or reckless indifference to the plaintiff's federally protected rights.

101.  As a result and consequence of the defendants' actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

102.  The defendants engaged in the practices complained of herein with malice and/or reckless indifference to the plaintiff's federally protected rights.

103.  As a result and consequence of the defendants' actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

104.  This claim is brought against the defendant employer(s) pursuant to Title VII and 42 U.S.C. §1981 and against individual defendants Lerner and Emanuel pursuant to 42 U.S.C. §1981.

## COUNT THREE
### Retaliation (Harassment) in Violation of Title VII and 42 U.S.C. §1981

105.  The plaintiff re-alleges all of the factual allegations set out above and incorporates the same by reference herein.

106.    The plaintiff engaged in protected opposition to illegal discrimination when he refused to consent to the hostile work environment created by the defendants' employees.

107.    The plaintiff engaged in protected activity when he complained about race discrimination, including racial harassment.

108.    The defendant employer(s) discriminated against the plaintiff on the basis of retaliation with respect to job assignments, discipline, other terms, conditions, and privileges of employment in violation of Title VII.

109.    The defendant employer(s) discriminated against the plaintiff by creating a retaliatory hostile work environment and ultimately terminating the plaintiff's employment in violation of Title VII.

110.    The defendant employer(s) engaged in the practices complained of herein with malice and/or reckless indifference to the plaintiff's federally protected rights.

111.    As a result and consequence of the defendant's actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

112.    This claim is brought against the defendant employer(s) pursuant to Title VII and 42 U.S.C. §1981 and against individual defendants Lerner and Emanuel pursuant to 42 U.S.C. §1981.

## COUNT FOUR
### Retaliation (Termination) in Violation of Title VII and 42 U.S.C. §1981

113.    The plaintiff re-alleges all of the factual allegations set out above and incorporates the same by reference herein.

114.    The plaintiff engaged in protected opposition to illegal discrimination when he refused to consent to the hostile work environment created by the defendants' employees.

115. The plaintiff engaged in protected activity when he complained about race discrimination, including racial harassment.

116. The defendant employer(s) discriminated against the plaintiff on the basis of retaliation with respect to job assignments, discipline, other terms, conditions, and privileges of employment in violation of Title VII.

117. The defendant employer(s) discriminated against the plaintiff by creating a retaliatory hostile work environment and ultimately terminating the plaintiff's employment in violation of Title VII.

118. The defendant employer(s) engaged in the practices complained of herein with malice and/or reckless indifference to the plaintiff's federally protected rights.

119. As a result and consequence of the defendant's actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

120. This claim is brought against the defendant employer(s) pursuant to Title VII and 42 U.S.C. §1981 and against individual defendants Lerner and Emanuel pursuant to 42 U.S.C. §1981.

## COUNT FIVE
## Fraud

121. The plaintiff re-alleges all of the factual allegations set out above and incorporates the same by reference herein.

122. This claim against the defendants arises from the laws of the State of Alabama which prohibit fraud.

123. At the time the defendant offered the plaintiff employment, it promised to repair the available beds, expand the facility, and add an in-house dialysis clinic.

124. The defendant's representations at the time he was hired were false.

125.    The defendants knew the representations were false or was reckless about the truth of those representations.

126.    The defendants intended for the plaintiff to rely on those statements.

127.    The plaintiff did in fact rely upon those statements.

128.    The plaintiff was harmed by his reliance upon those statements or the plaintiff's reliance upon the defendants' misrepresentations was a substantial factor in causing the harm suffered.

129.    This claim is brought against the defendant employer(s) and individual defendants Lerner and Emanuel pursuant to Alabama law.

## COUNT SIX
### Intentional Infliction of Emotional Distress

130.    The plaintiff re-alleges all of the factual allegations set out above and incorporates the same by reference herein.

131.    This claim against the defendants arises from the laws of the State of Alabama which prohibit the intentional infliction of emotional distress.

132.    The defendant employers are liable to the plaintiff for the conduct of defendant Emanuel pursuant to *respondeat superior* and/or because defendant employer (a) knew or should have known about their unfitness and continued to employ them; (b) defendants used the services of Emanuel without proper instruction and with a disregard of the rights or safety of others; and/or (c) defendants authorized, ratified and/or condoned the actions of its agent, Emanuel, which amounted to intentional infliction of emotional distress.

133.    The defendants engaged in the practices complained of herein with malice and/or with reckless indifference to the plaintiff's rights.

134.    This behavior proximately caused the plaintiff to suffer great emotional distress for which she claims compensatory and punitive damages from defendants.

135.    This claim is brought against the defendant employer(s) and individual defendants Lerner and Emanuel pursuant to Alabama law.

### COUNT SEVEN
### Negligent or Wanton Training, Retention, and Termination

136.    The plaintiff re-alleges all of the factual allegations set out above and incorporates the same by reference herein.

137.    This claim against the defendants arises from the laws of the State of Alabama which prohibit negligent and/or wanton, hiring, supervision, training, and retention of supervisors and employees.

138.    The defendants negligently and/or wantonly failed to adequately supervise, train, and/or retain its agents or employees who harassed the plaintiff because of his race and which proximately caused the racial harassment and/or the retaliation against the plaintiff.

139.    This behavior proximately caused the plaintiff to suffer great emotional distress for which he claims compensatory and punitive damages from defendants.

140.    This claim is brought against the defendant employer(s) pursuant to Alabama and not against individual defendants Lerner and Emanuel.

**VIII.    PRAYER FOR RELIEF**

WHEREFORE, the plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

18

1.      Grant the plaintiff a declaratory judgment holding that the actions of the defendants described hereinabove violated and continue to violate the rights of the plaintiff as secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981, and Alabama law.

2.      Grant the plaintiff a permanent injunction enjoining the defendants, their agents, successors, employees, attorneys and those acting in concert with the defendants and on the defendants' behalf from continuing to violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981, and Alabama law.

3.      Issue an injunction ordering the defendants not to engage in discrimination and acts which violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981, and Alabama law.

4.      Grant the plaintiff an order requiring the defendants to make the plaintiff whole by reinstating him to the position he would have occupied in the absence of the discrimination as set out herein, backpay (plus interest), compensatory damages, and punitive damages.

5.      The plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

Respectfully submitted,

*/s/ H. Wallace Blizzard*
H. Wallace Blizzard
WIGGINS, CHILDS, PANTAZIS,
FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205.314.0593 (phone/fax/text)
wblizzard@wigginschilds.com

*/s/Daniel A. Hannan*
Daniel A. Hannan
DANIEL A. HANNAN, LLC
P.O. Box 4248

19

Gulf Shores, Alabama 36542
Work:  251-289-1326
Cell:    251-654-1360
Fax:     251-252-1331
dahlawyer@hotmail.com
hannanlaw@gmail.com

*Attorneys for Plaintiff*

# JURY TRIAL DEMAND

Plaintiff requests a trial by struck jury on all questions of fact raised by his complaint.

*/s/ H. Wallace Blizzard*
H. Wallace Blizzard
WIGGINS, CHILDS, PANTAZIS,
FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205.314.0593 (phone/fax/text)
wblizzard@wigginschilds.com

*/s/Daniel A. Hannan*
Daniel A. Hannan
DANIEL A. HANNAN, LLC
P.O. Box 4248
Gulf Shores, Alabama 36542
Work:  251-289-1326
Cell:    251-654-1360
Fax:    251-252-1331
dahlawyer@hotmail.com
hannanlaw@gmail.com

*Attorneys for Plaintiff*

## DEFENDANTS MAY BE SERVED BY CERTIFIED MAIL AT THE FOLLOWING ADDRESSES:

Azalea Health and Rehab LLC
c/o Corporate Creations Network Inc.
4000 Eagle Point Corporate Drive
Birmingham, AL 35242

Essential Health Group LLC
c/o Corporate Creations Network Inc
4000 Eagle Point Corporate Drive
Birmingham, AL 35242

Essential Health Group II LLC
c/o Corporate Creations Network Inc
4000 Eagle Point Corporate Drive
Birmingham, AL 35242

Essential Health Group III LLC
c/o Corporate Creations Network Inc
6 Office Park Circle #100
Mountain Brook, AL 35223

Essential Health Group IV LLC
c/o Corporate Creations Network Inc
4000 Eagle Point Corporate Drive
Birmingham, AL 35242

Premier Healthcare Consultants, LLC
c/o Melanie Kilgo
1940 Shelia Avenue
Southside, AL 35907

Shalom Lerner
1820 Avenue M, Suite 480
Brooklyn, NY 11230-7821

Yossi Emanuel
969 South End
Woodmere, NY 11598-1023